MRS. JOSEPHINE POTH ET AL V. SAM ROOSTH ET AL.

No. A-1144. Decided May 28, 1947.
(202 S. W., 2d Series, 442.)

**8**

Boone, Boone & Davis, of Corpus Christi, for Mrs. Poth, Kleberg, Eckhart, Mobley & Roberts, of Corpus Christi; Graves & Dougherty and Ireland Graves, of Austin, for Taylor Refining Co., Petitioners.

W. Edward Lee, of Tyler, for respondents.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

This case presents questions as to the effect and the validity of a "take nothing" judgment rendered December 19, 1938, by the district court of Nueces County in a suit brought by petitioner, Mrs. Josephine Poth and her husband, E. W. Poth, now deceased, against respondents Sam Roosth, Genro Drilling Company and others, affecting a tract of land adjoining the city of Corpus Christi and described as containing 14.21 acres, more or less.

The 14.21 acre tract of land, the title to which is in controversy, is part of a larger tract that was owned and occupied by E. W. Poth and wife as their homestead on and prior to January 24, 1936. On that date Poth and wife executed and delivered

to Richardson Production Company, Inc., an oil and gas lease of the 14.21 acres. Thereafter the leasehold estate was acquired by respondents Sam Roosth and A. S. Genecov, and others of the respondents or their predecessors became owners of interests therein. The first suit, referred to herein as cause No. 18202-B, in which the take nothing judgment was rendered, was filed by E. W. Poth and wife on July 16, 1938. The first five paragraphs of the petition contain the formal allegations of an action in trespass to try title, and the succeeding paragraphs contain allegations as to the execution of the oil and gas lease and as to the termination of the lease by reason of the cessation of production and the failure of the defendants to prosecute drilling operations, with a prayer for the cancellation of the lease, the removal of cloud, and for damages. The petition was twice amended, new parties defendant being made, and when the case was called for trial the second amended original petition, which will hereinafter be discussed, had been filed. The defendants Sam Roosth, Genro Drilling Company and others filed an answer which contained a plea of not guilty, a general denial, several paragraphs of defensive pleadings to defeat cancellation of the lease, and a cross action alleging the defendants' owneriship of the lease and praying that the plaintiffs be enjoined from interfering with their "operation of said leasehold and premises."

When the case was called for trial the attorneys for the plaintiffs, Poth and wife, announced that they were not ready for trial because the plaintiffs had not been served with citation on the defendants' cross action, saying that they would be ready if the defendants would withdraw their cross action. The trial judge announced that the case would be tried "on the main cause of action and on the cross action too." Thereupon the attorneys for the plaintiffs left the court room and the court proceeded with the case in their absence. The defendants took a non suit of their cross action, offered evidence, and filed a motion for an instructed verdict, which was granted. The trial court rendered judgment that the plaintiffs "do have and recover nothing of and from the defendants as to the title and possession of the following described land." The land described in the judgment is the land in controversy therein and the same as that described in the oil and gas lease.

Poth and wife appealed from that judgment by writ of error, and while the cause was pending in the Court of Civil Appeals they negotiated with the attorneys for Roosth and the other defendants for the settlement of that cause and of a judg-

ment that had been rendered in county court in favor of Poth against Sam Roosth and A. S. Genecov. The evidence as to the terms of the settlement made is somewhat conflicting. Petitioners insist that the agreement was that the cause pending in the Court of Civil Appeals would be dismissed, while respondents contend that the appeal was to be dismissed. Motion to dismiss was filed, moving to "dismiss the appeal" and praying that "this cause be dismissed." The order entered by the Court of Civil Appeals on April 19, 1939, granting the motion, refers to it as a motion to dismiss the writ of error, and recites that the writ of error is dismissed.

Thereafter Poth and wife continued in possession of the land, asserting ownership of the fee title subject only to the rights under the oil and gas lease, and paying taxes on the land, until Poth's death on February 2, 1941. Poth's entire estate was willed to his wife, and she continued to possess and assert ownership of the land until she sold and conveyed it to petitioner, Taylor Refining Company, on April 1, 1942, retaining a vendor's lien to secure part of the purchase money. Taylor Refining Company took possession of the land a short time thereafter and made valuable improvements on it. Respondents continued to operate the oil well on the land and Poth and his wife were paid royalties therefrom until the last monthly payment of royalty was made in October, 1940, and a final payment was made in January, 1941, from the residue of oil in the tanks. There was no further production from the lease. The respondents herein did not assert an adverse claim of title to the land until on or about October 8, 1942, and they have not at any time rendered for taxation, or paid taxes upon, the fee title or any interest in the land other than the working interest under the oil and gas lease. These facts are taken from the trial court's findings of fact, which are supported by evidence in the record.

This suit was filed by Mrs. Poth on December 31, 1941. The original petition, in its first eight paragraphs, is a formal action in trespass to try title. This is followed by further allegations which relate to the execution of the oil and gas lease, its expiration according to its terms and its termination by reason of cessation of production and of operations, with prayer for the cancellation of the lease and for damages. On October 8, 1942, respondents filed herein a cross action against petitioners, Mrs. Poth and Taylor Refining Company, alleging ownereship of the land in fee simple and praying for title and possession. The case was tried on Mrs. Poth's second amended original petition, Taylor Refining Company's second amended original

answer and cross action, which is in substance the same as Mrs. Poth's pleadings, the answers of the defendants and the cross action above mentioned. In her trial petition, after substantially the same allegations as those contained in her original petition, Mrs. Poth alleges in detail facts as to the institution of the former suit, cause No. 18202-B, the pleadings therein, the proceedings at the trial, the rendition of judgment, the appeal, the settlement of the controversies, and the order of dismissal entered in the Court of Civil Appeals, and other facts which have been stated briefly herein as to possession of the land, payment of royalties, etc. The petition attacks the judgment of the district court in that cause as void for the reason that the court, in the circumstances and under the pleadings, had no jurisdiction and no power with respect to the cause other than to dismiss it. It further alleges that the take nothing judgment did not have the effect of divesting the plaintiffs of the title to the land and vesting it in the defendants, because the cause of action as made by the pleadings was in fact a suit to cancel the oil and gas lease. Allegations of estoppel are made, based primarily upon the agreement of settlement made by the parties after the suit was appealed to the Court of Civil Appeals and conduct of the respondents thereafter.

The trial court rendered judgment in favor of petitioners and against respondents for title and possession of the land in controversy and decreed the termination and cancellation of the oil and gas lease. Elaborate findings of fact were made, and conclusions of law were filed, the more important of which conclusions are that the take nothing judgment rendered in cause No. 18202-B on December 19, 1938, was utterly void; that if the judgment had any validity its only legal effect was to adjudicate in the defendants the seven-eighths mineral interest under the oil and gas lease; and that the leasehold interest was terminated by cessation of operations and by abandonment long before the trial of this case. The Court of Civil Appeals reversed and rendered the trial court's judgment, holding that the effect of the take nothing judgment was to divest the plaintiffs in that suit of all title to the land and to vest the title in the defendants, that the judgment was not void, and that petitioners' attack on the judgment is barred because of failure to exercise diligence in making it. 198 S. W. (2d) 132.

The Court of Civil Appeals, for support of its ruling as to the meaning and effect of the take nothing judgment, cites Permian Oil Co. v. Smith, 129 Texas 413, 73 S. W. (2d) 490, 107 S. W. (2d) 564, 111 A. L. R. 1152. That case involved the

title to a section numbered 103 and the important question before the Court was as to the effect of a judgment that had been rendered in a prior suit. The petition in the prior suit was in the statutory form of trespass to try title, describing sections 103 and 104, the answer was a plea of not guilty, and the judgment was that the plaintiff take nothing by his suit. The plaintiff in the second suit, the Permian case, held under the defendant in the prior suit and asserted title to section 103 by virtue of the take nothing judgment. The defendants in the Permian case contended that the title to section 103 was not determined by the prior judgment, because it was shown by the findings of fact and conclusions of law in that case that the issue of fact tried and determined was one of boundary only and not of title. This Court held, however, in the Permian case that the take nothing judgment was uambiguous and could not be contradicted or interpreted by the trial court's findings, and, following prior decisions, held that the effect of the judgment was to vest the title in the defendant in that case.

Chief Justice Cureton filed a vigorous dissenting opinion in the Permian case, protesting against the testing of the take nothing judgment by its form rather than by its substance. He took the position that the judgment was clearly ambiguous because of its vagueness and that it was necessary to examine the record in order to ascertain the nature of the cause of action and to interpret the judgment in such a manner that it would award the judicial consequences of the ascertained facts. He concluded from the trial court's findings of fact and conclusions of law that the words "take nothing," as used in the judgment, were not intended to award title to any land.

We recognize the decision made by the majority of this Court in the Permian case as the settled law of this State, but we are unwilling to extend its rule beyond what was actually decided there. As clearly appears from the majority opinion on rehearing, the Court, in deciding what the effect of the take nothing judgment was, looked to the pleadings and construed the judgment in the light of the pleadings. The Court held that the pleadings, which were merely formal with a description of the land, put in issue the title to the land and the right of possession, saying: "The cause of action which was asserted against the defendant by the plaintiff in the trespass to try title suit of Monroe v. Hickox, *plead in general form,* was the claim to the title and possession of the land described." (Emphasis added). The Court concluded that "both the title and the

possession of defendant was established as between the parties by the judgment." These significant words follow:

"In this State a petition *limited to the statutory form of trespass to try title* always put in issue both title and possession. Any one of a number of facts may determine the issue, but the cause of action remains the same. If the plaintiff seeks to limit the issue to one of such facts, he must do so by special pleading in appropriate form. By so doing he may limit the case to the portion of his land involved in the boundary dispute, or possession, or to some other incident of title." (Emphasis added). 129 Texas 453-454, 107 S. W. (2d) 570.

In later decisions the Court has looked carefully to the pleadings in order to determine the scope and meaning of a take nothing judgment. The plaintiffs in Knight v. The Chicago Corporation, 144 Texas 98, 188 S. W. (2d) 564 brought suit "in the form of an action in trespass to try title for a decree that a certain oil, gas and mineral lease executed by them * * * had terminated." The plaintiffs were the owners of an oil payment out of 1/32 of 7/8 of the production and of royalties. Following an instructed verdict, the trial court rendered judgment that the plaintiffs "take nothing" against the lessee defendant and certain other parties, including royalty owners. Referring to the Permian case and to the plaintiffs' complaint of the form of the judgment, this Court held that they were not injured by the form of the judgment, that their rights to the oil payment and the royalties had not been impaired by the judgment, and that the decree that they take nothing "merely vests in the lessee and those holding valid interests under it that particular leasehold estate." This, because the plaintiffs by their pleadings "put in issue only the title to the 7/8ths leasehold interest conveyed by them in the lease charged with the oil payment in their favor."

The district court, in Jinks v. Whitaker (affirmed, as modified, by the Court of Civil Appeals, 195 S. W. (2d) 814) rendered judgment that all relief sought by the plaintiffs, Mrs. Jinks and others, against the defendant be denied, and that "plaintiffs take nothing as against the defendant." Mrs. Jinks, in her application for writ of error, assigned error in the trial court's judgment because it appeared to divest her of title to the surface of the land. In refusing the application this Court wrote a per curiam opinion holding that "the 'take nothing' judgment of the district court, construed in the light of the pleadings, did not have the effect of vesting title to the surface

in the defendant, respondent here." Jinks v. Whitaker, 145 Texas 318, 198 S. W. (2d) 85. The first three paragraphs in Mrs. Jinks' trial petition were a formal action of trespass to try title. They were followed by many paragraphs in which she attacked on several grounds instruments executed by her conveying mineral interests in the land to the defendant Whitaker. The prayer of the petition was for judgment divesting out of the defendant and vesting in the plaintiff the title and possession of the mineral interests that had been conveyed by the several deeds, and for general relief.

Petitioners made the contention in the Court of Civil Appeals, and renew it here, that notwithstanding the formal allegations of trespass to try title in the first paragraphs of the petition in cause No. 18202-B, the particular allegations with respect to the oil and gas lease in the paragraphs that followed put in issue only the 7/8 mineral interest under the lease, and that consequently the take nothing judgment is controlled by the nature of the title or interest that thus was in issue and is a denial of the plaintiffs' suit to cancel the lease and of their right of possession cleared of the lease.

To support this contention, petitioners rely upon Snyder v. Nunn, 66 Texas 255, 18 S. W. 340, and other like decisions. See: McDonald v. Red River County Bank, 74 Texas 539, 12 S. W. 235; Sanderson v. Sanderson, 130 Texas 264, 266, 109 S. W. (2d) 744; Ulmer v. Ulmer, 139 Texas 326, 330, 162 S. W. (2d) 944; McDonald v. Follett, 175 S. W. (2d) 671, 675 (affirmed 142 Texas 616, 180 S. W. (2d) 334) ; Sutton v. Lewis, 176 S. W. (2d) 765, application for writ of error refused. These cases hold that when a plaintiff, after setting out in his petition a formal action of trespass to try title, pleads his title specially, or supplements the general allegations by alleging with particularly the facts upon which he relies for relief, the sufficiency of his petition is tested and his right of recovery is limited by the title specially pleaded or the facts particularly alleged.

The Court of Civil Appeals held this rule to be inapplicable in this case, saying that the second count of the petition in cause No. 18202-B did not in any way plead a special title and did not have the effect of limiting the first count in any way. Thereupon, that court, applying the rule of the Permian case, construed the take nothing judgment as vesting in the defendants the entire title to the land. With these conclusions we cannot agree. It is true that the plaintiffs in cause No. 18202-B

did not plead their title specially in the sense of alleging various instruments through which they claimed to have acquired their title, but they did by special pleadings following the formal paragraphs allege with particularity the issues of fact which they were tendering for trial and the grounds upon which they relied for recovery. These allegations were, in our opinion, special pleadings in appropriate form and limited the case to the subject matter and the issues particularly alleged.

The trial petition in that suit, after the formal allegations of trespass to try title in the first five paragraphs, introduces the succeeding paragraphs numbered 6 to 10 with these words: "Now come E. W. Poth and wife, Josephine Poth, plaintiffs in the above styled and numbered cause and for further cause of action against said defendants, would respectfully show to the court." In paragraph 6 to 10 allegations are made as to the execution and the terms and provisions of the oil and gas lease, the assignment of the same in various interests to the defendants, the drilling of an oil well on the land, its improper and negeligent operation, the cessation of production from the well, the failure of the defendants thereafter to commence additional drilling operations within the time limited by the lease, the termination of the lease, with demand for and refusal of the execution of a release of the lease, and allegations of damages. The prayer is for judgment cancelling the lease and all of the interests and claims asserted by the defendants under the lease, for removal of cloud and for damages.

By this special pleading the title to the leasehold estate or interest was made the subject matter of the suit, the controversy in the case, as far as title and the right of possession were concerned, being limited to the question whether the leasehold estate or interest remained in the defendants or had been terminated and had passed to the plaintiffs. The pleadings admitted the execution of the lease and the defendants' possession under it, and by its allegations the plaintiffs' rights to the entire title and full possession that they sought to recover were conditioned upon the cancellation of the lease.

The construction of the allegations in paragraph 6 to 10 of the petition above discussed as a special pleading limiting the case to the facts particularly alleged notwithstanding the formal action of trespass to try title in the first five paragraphs of the petition, is supported by Ulmer v. Ulmer, 139 Texas 326, 162 S. W. (2d) 944. The petition of Mrs. Ulmer, the plain-

tiff, contained in its beginning the formal allegations of an action in trespass to try title. These were followed by particular allegations showing the execution of deeds by Mrs. Ulmer, charging that their execution was procured by undue influence, or by fraud, and seeking cancellation of the deeds, or that the property be impressed with a trust in her favor. The trial court sustained a general demurred to the petition and dismissed the suit. In affirming that judgment, this Court, after stating briefly the substance of the pleadings, said:

"Simply stated, in addition to an ordinary pleading in trespass to try title, Mrs. Lula Bell Ulmer specifically pleads her asserted title. Such a petition must be tested as to its sufficiency by the title specifically pleaded."

Mrs. Ulmer did not specially plead her title by alleging the instruments through which she acquired it. Her particular allegations, like those in cause No. 18202-B, were as to her execution of an instrument or instruments which she sought to cancel. Her case, according to the Court's decision, limited by the particular allegations and wholly failed because they were insufficient.

In Campbell v. Schrock (Com. App.) 50 S. W. (2d) 788, it was held that the court, in determining the effect of a take nothing judgment, will look to the pleadings of the adversary party as well as to the pleadings of the party against whom the judgment was rendered. It is apparent from the defendants' pleadings in cause No. 18202-B that the oil and gas leasehold estate was the subject of the controversy therein and that they construed the cause of action alleged in the petition as one for the cancellation of the lease and not an action of trespass to try title. The original petition in that suit, like the amended trial petition, was in its beginning a formal action in trespass to try title, followed by special pleading as to the oil and gas lease and for its cancellation. To this petition two of the defendants, Sam Roosth and Genro Drilling Company, filed a plea in abatement alleging that "although the first count of plaintiffs' petition is in trespass to try title, it appears, as is reflected by paragraph 6 thereof and following, that plaintiffs' suit has for its purpose that of cancelling that certain oil and gas lease alleged to have been executed by plaintiffs," describing it, and alleging further that certain persons owned interests in the lease, and that "none of said parties are made defendants in this suit for cancellation," and praying for dismissal of the suit because those persons were necessary and in-

dispensable parties defendant. The plea was met by an amended petition which made the persons named in the plea parties defendant.

■ The trial answer of the defendants in that case contained a general demurrer, several special exceptions directed to the part of the petition relating to the oil and gas lease, a plea of not guilty, a general denial, and several special defenses to defeat cancellation of the lease and the claim for damages. The answer was followed by a cross action seeking affirmative relief under the lease and praying that the plaintiffs be enjoined from interfering with the defendants in their operation of the leasehold estate. The cross action was dismissed when the case was called for trial and after the attorneys for the plaintiffs had left the court room, but it is a part of the record and may be considered with the petition, the plea in abatement and the answer as showing that the oil and gas leasehold estate was the subject matter of the controversy.

■ Respondents take the position that the plaintiffs' petition in cause No. 18202-B contained allegations of two distinct and independent causes, one the statutory action of trespass to try title which put in issue the title and the right of possession, and the other a count in equity for the cancellation of the oil and gas lease, and that the issues raised by the action for title were in no way limited by the second count. They insist that the word "further" in the paragraph introductory of subdivisions 6 to 10 of the petition means that in those paragraphs an additional and independent cause of action is alleged. As has been indicated above, the more reasonable construction of the petition, in our opinion, is that by paragraphs 6 to 10 the plaintiffs supplemented and explained the general, formal allegations by further and particular pleadings which limited the case to the leasehold estate and the defendants' right of possession under it or the plaintiffs' right of possession cleared of it. It follows that the legal effect of the take nothing judgment, read and measured as it must be by the pleadings, was to deny to the plaintiffs the cancellation of the lease and the recovery of the leasehold estate, and to affirm the defendants' ownership of the leasehold estate and right of possession under it, and that the judgment did not divest the plaintiffs of the entire title to the land and vest it in the defendants.

In view of the conclusion as to the meaning and effect of the take nothing judgment, it is unnecessary to decide other questions presented. On the trial respondents offered in evidence, for

the purpose of showing common source of title, the deed by which the land in controversy herein was conveyed by W. C. Stewart and G. O. Newman to E. W. Poth on February 12, 1912; and for proof of title respondents relied upon and offered in evidence the plaintiffs' second amended original petition and the take nothing judgment in cause No. 18202-B, together with documents to show the disposition of the appeal from that judgment. The trial court's finding that after the rendition of the take nothing judgment and long before the trial of this case the oil and gas lease was terminated by cessation of production and by abandonment is supported by the evidence. It follows that the trial court correctly rendered judgment in favor of petitioners against respondents for the title and possession of the land in controversy and for the cancellation of the oil and gas lease. The part of the trial court's judgment decreeing that the take nothing judgment is void (a question as to which we have expressed no opinion) becomes immaterial and may be disregarded.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion delivered May 28, 1947.

No motion for rehearing filed.